IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff-Respondent, | § | |
| | § | |
| v. | § | 2:11-CR-553 |
| | § | (2:14-CV-111) |
| ENRIQUE VEGA-MILIAN, | § | |
|     Defendant-Movant. | § | |

## MEMORANDUM OPINION AND ORDER

Enrique Vega-Milian (Vega-Milian) filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 74.[1] The government responded to the motion and filed defense counsel's affidavit. D.E. 81, 82, 87. No reply was filed.

Separately, Vega-Milian has two motions for retroactive application of the sentencing guidelines before the Court, including letters of support. D.E. 88, 89, 90. Those motions will be addressed by separate Order.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Vega-Milian was convicted of possession with intent to distribute more than 1000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) following a two-day jury trial.

The Probation Department prepared a Presentencing Investigation Report (PSR), wherein it calculated Vega-Milian's base level offense at 32 based upon the weight of marijuana found in his trailer (1753.52 kilograms). Vega-Milian did not have a prior criminal record. The statutory

---

[1] Docket entry numbers (D.E.) refer to the criminal case.

minimum sentence was 10 years imprisonment. His sentencing range was 121-151 months. No objections were filed to the PSR.

At sentencing, the government recommended safety valve for Vega-Milian, which would reduce his offense level by 2 levels and remove application of the statutory minimum. The government agreed to an additional two-point reduction for acceptance of responsibility, despite the trial. Vega-Milian's total offense level was reduced to 28, and his guideline sentencing range was reduced to 78-97 months. The government recommended a mid-range sentence. Counsel argued for a low range sentence. The Court sentenced Vega-Milian to 84 months imprisonment, to be followed by 5 years supervised release. Vega-Milian appealed, but the judgment was affirmed by the Fifth Circuit Court of Appeals on February 22, 2013. *United States v. Vega-Milian*, No. 12-40299 (5th Cir. Feb. 22, 2013) (per curiam) (designated unpublished). Vega-Milian's motion to vacate is timely.

### III.  MOVANT'S ALLEGATIONS

Vega-Milian raises three issues: 1) trial counsel failed to discuss with him the benefits of pleading guilty versus going to trial even though Vega-Milian "expressed a desire to plea [sic] guilty but his counsel promise him that he can grant the trial;" 2) his sentence was constitutionally defective under *Apprendi* because the jury is required to decide drug quantity; and 3) the district court failed to instruct the jury that it must find that Vega-Milian knew the type and quantity of the drugs he possessed.

### IV.  ANALYSIS

A.  **28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum,

2

and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

**B.  Jury Charge Claims**

    1.  *The jury was required to find drug quantity*

Vega-Milian claims that the jury was required to find the quantity of drugs on which his sentence was based. The jury answered two issues and found Vega-Milian guilty on Count One and found the quantity of marijuana in Count One exceeded 1000 kilograms. D.E. 29. Vega-Milian's punishment range was based upon a drug quantity of more than 1000 kilograms of marijuana, a level 32. Vega-Milian's complaint is contradicted by the record; the jury found the drug quantity.

    2.  *The jury was required to find that Vega-Milian knew the type and quantity of the drugs he possessed*

Vega-Milian claims the jury was required to also find that he knew both the type of controlled substance and its quantity that he possessed. He raised this issue on appeal. *See Vega-Milian*, No. 12-40299 at p. 3.[2] He is not entitled to raise it again on collateral review. *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). Furthermore, as the Fifth Circuit noted, Vega-Milian's claim that the government had to prove his knowledge of the type and quantity of the controlled

---

[2]
> Finally, Vega–Milian contends that the evidence was insufficient to support his conviction because the government was obliged to prove his knowledge of the type and quantity of the drug he carried. He concedes that this issue is foreclosed by *United States v. Betancourt*, 586 F.3d 303 (5th Cir. 2009), but he raises it to preserve it for further review. Vega–Milian is correct that his contention is foreclosed. *See id.* at 308–09.

*Id.*

3

substance is not a required element. *United States v. Betancourt*, 586 F.3d 303, 308-09 (5th Cir. 2009) (holding that "the Government did not need to prove beyond a reasonable doubt that Betancourt knew the type and quantity of drugs in his trailer").

## C. Claims of Ineffective Assistance of Counsel

### 1. *Legal standard for ineffective assistance of counsel*

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### 2. *Claim that counsel failed to advise him of benefit of guilty plea*

Vega-Milian claims that his trial counsel was ineffective on the grounds that he "did not

4

adequately advise him regarding the benefits and consequences of plea guilty versus going to trial, therefore about the possibility of pleading guilty and receiving a 2 or 3 level reduction in acceptance of responsibility. Petitioner pointed that prior to his trial he expressed a desire to plea guilty but his counsel promise him that can grant the trial." D.E. 74, p. 5. The Court understands Vega-Milian to complain that counsel did not adequately explain the risks and benefits of going to trial versus the benefits of pleading guilty and securing a reduction in offense level of two to three points for acceptance of responsibility. The Court does not understand Vega-Milian's second sentence, "Petitioner pointed that prior to his trial he expressed a desire to plea guilty but his counsel promise him that can grant the trial." *Id.*

Vega-Milian provides no details regarding his alleged conversation with counsel, such as when it took place, where, whether others were present, and counsel's response. In contrast, the record of proceedings reflects that from the very beginning, Vega-Milian insisted that he did not know that his cargo included contraband. *See* D.E. 1 (statement of Vega-Milian to agents). Vega-Milian's trial testimony further denied that he knew there were drugs in his shipment. *See* D.E. 64, pp. 307, 334-35.[3] He claimed that he loaded at a warehouse after getting information about the load from a man he met weeks before and whom he knew only as "El Flaco." He testified that the cargo was loaded on pallets into the rear of his trailer and he was to transport the load to the location on

---

[3] Q. Mr. Vega, let me ask you this question: On May 9th of this year, did you know that you were transporting marijuana?
A. No, sir.
*\*\*\**
Q. Sir, the Government here has charged you with a crime of possession with intent to distribute a lot of marijuana. You know that, right?
A. Yes, sir.
Q. On May 9th of this year, were you transporting marijuana knowingly?
A. No, sir.

*Id.*

5

the bill of lading. The evidence at trial revealed that the purported recipient of the load did not purchase those items from the shipper.[4] The bill of lading was demonstrated to be a forgery.[5]

---

[4] Q. . . .see what's up there, what are the items listed that you are looking at there?
A. That's in Spanish. It says papas falatas; tamarindo, which is tamarin; is potato chips; New Mexico chilis; and chile rellano is another type of pepper; and chile guajillo.
Q. Okay. Do you ever purchase -- you mentioned the companies that you buy these items from. Where are those companies located?
A. They're located in Dallas.
Q. Is there a reason why you purchase from companies in Dallas?
A. The whole thing is logistics. They are wholesalers. So, they specialize in large quantities. We just -- we are a retailer. We buy small quantities, and for you to get a shipment from Mexico would be -- you have to buy a whole bunch of it; . . .
Q. Okay. And the amounts listed on here, do you ever purchase these items in those amounts?
A. No.

D.E. 60, p. 185 (Testimony Jimmy Meija, La Azteca meat market).

[5] Q. I'm going to put up a document, and you will be able to see it on that screen in front of you there. This is Government Exhibit 21 [Bill of Lading].
Does this document look familiar to you?
A. No, sir.
Q. Now, right up here to the side of that line, that emblem there, what does that emblem say?
A. Fresh Tex Produce.
Q. Is that the emblem of your company?
A. That is our logo, yes.
Q. Is it a bill of lading that your company uses?
A. No, sir.
Q. How can you be sure?
A. I see them every day, and I know that -- basically, we don't have a format of this, for one, of the actual list of it; but the items -- we don't even sell those items.
Q. Okay. And if you would -- and when we are talking about "the items," you're talking about any -- none of those items at all you sell?
A. No, sir. . . . .
Q. Now, where it says "destination" on there, La Azteca Market in Denton, Texas, do you ever deal with that company? Does that company ever purchase produce from Fresh Tex?
A. No, sir.
Q. And let's clarify that. Is that in the year and a half that you have been there you have never dealt with them?
A. That's ever. Ever. I get a full list of our customers that we have ever had purchase.

6

Moreover, Vega-Milian's account of the location where he loaded his trailer was not Fresh Tex as stated on the Bill of Lading.

Counsel's affidavits state that Vega-Milian was never interested in pleading guilty and that counsel explained that a guilty plea and a successful safety valve debriefing could result in a sentencing range of 70 to 87 months, while a trial would likely result in a sentence of at least 120 months, the statutory minimum sentence. D.E. 81, 82. Counsel asserts this information was presented to Vega-Milian several different times, but Vega-Milian was not interested in pleading guilty, "expressed a desire for a trial," and "expressed his innocence of the charges pending against him." D.E. 81.

There is a conflict between counsel's affidavit and the sworn motion by Vega-Milian, but a § 2255 movant is not entitled to an evidentiary hearing on an issue unless "he can provide independent indicia of the likely merit of his allegations, typically in the form of one or more affidavits from *reliable* third parties." *United States v. Franks*, 397 Fed. App'x. 95, 99 (5th Cir. Oct. 6, 2007) (per curiam) (designated unpublished) (internal citations omitted, emphasis in original) (district court did not abuse its discretion by not holding evidentiary hearing where movant's conduct during proceeding inconsistent with his claims). If the movant's showing "is inconsistent with the bulk of his conduct" or he otherwise fails to meet his burden in light of the other evidence in the record, an evidentiary hearing is unnecessary. *Id*. (citing *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)). Moreover, "an evidentiary hearing is not required when the petitioner's allegations are contradicted directly by his testimony in court." *United States v. Smith*, 844 F.2d 203, 208 (5th Cir. 1988).

Vega-Milian's trial testimony stated that he did not know his cargo included drugs. His claim

---

D.E. 64, pp. 205-06 (Testimony of Ryan Wolverton, FreshTex Produce).

that he would have pled guilty if he had known he might have been sentenced to a term within 70 to 87 months is inconsistent with counsel's affidavit and, more importantly, is inconsistent with Vega-Milian's conduct throughout the proceedings and his trial testimony.

## V.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Vega-Milian has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A Certificate of Appealability (COA) "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Vega-Milian is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Vega-Milian's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 74) is **DENIED**. He is also **DENIED** a Certificate of Appealability.

It is so **ORDERED.**

**SIGNED** on this 23rd day of March, 2015.

                                                              _____
                                                              JOHN D. RAINEY
                                                              SENIOR U.S. DISTRICT JUDGE